**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-0885-WJM

CHANCE JENSEN, guardian of Emily Jensen, minor, on behalf of Briana J. Barker, claimant,[1]

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

---

## ORDER

---

This matter is before the Court on review of Defendant Commissioner of the Social Security Administration Andrew M. Saul's (the "Commissioner's") decision denying Claimant Briana J. Barker's application for disability insurance benefits ("DIB") and Supplemental Security Income benefits ("SSI") under Titles II and XVI of the Social Security Act. For the reasons set forth below, the Commissioner's decision denying Claimant's application is affirmed.

### I. BACKGROUND

Claimant was born in in 1978 and was 37 years old on July 11, 2016, on the

---

[1] Counsel for Plaintiff has not made it clear on whose behalf this cause is brought. The Complaint's caption states that the Plaintiff is Emily Jensen, on behalf of Briana Barker Claimant. (ECF No. 1.) However, the introductory language of the Complaint states that the Plaintiff is Chance Jensen, guardian of Emily Jensen, for the deceased Briana Barker. (*Id.* at 1.) For the sake of clarity, because Ms. Barker was the claimant in the proceedings on appeal, the Court will refer to Ms. Barker as "Claimant." And because it appears as though Mr. Jensen brings this case on behalf of Emily Jensen, a minor, the Court will refer to Mr. Jensen as "Plaintiff."

alleged disability onset date. (Administrative Record ("R.") ECF No. 18 at 29.) Claimant died on March 24, 2019, and therefore, this appeal is brought by Chance Jensen, the guardian of Claimant's minor child, Emily Jensen, for any past-due benefits. (ECF No. 25 at 1–2; ECF No. 33 at 2.) Claimant had a high school education and could communicate in English. (R. at 29.) She had past relevant work as a bartender and a server. (*Id.*)

On September 2, 2016, Claimant filed an application for DIB and SSI, alleging that she became disabled on July 11, 2016. (R. at 20.) She alleged that her disability began in July 2016 due to recurring acute pancreatitis, type 1 insulin dependent diabetes mellitus, stage 3 chronic kidney disease, moderate peripheral circulatory disorder, nerve disorder, diabetic neuropathy, methicillin resistant staphylococcus aureus in left heel, eye and vision problems due to diabetes, and carpal tunnel in the left wrist. (R. at 194, 200.)

At Claimant's request, the Administrative Law Judge ("ALJ") held a hearing on January 18, 2019 at which Claimant, her attorney, and a vocational expert appeared. (R. at 35–50, 94–95.) In a decision issued on March 1, 2019, the ALJ found that Claimant was not disabled and was not entitled to DIB or SSI because she retained the residual functional capacity ("RFC") to perform her past relevant work as a bartender and a waitress, and alternatively, there was a significant number of jobs that she could perform, given the limitations in her RFC determination. (R. at 27–29.) After the Appeals Council denied review, Plaintiff appealed the ALJ's decision to the United States District Court. (R. at 1–6.)

## II. THE ALJ'S DECISION

On March 1, 2019, the ALJ denied Claimant's application for DIB and SSI in a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2] (R. at 20–29.)

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since July 11, 2016, the alleged onset date. (R. at 22.)

At step 2, the ALJ found that Claimant had severe impairments of diabetes and kidney disease, and non-severe impairments of pancreatitis and vision loss. (R. at 23.)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. Parts 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.*)

Regarding Claimant's RFC, the ALJ found:

> [T]he Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except she can occasionally operate foot controls; no hazardous work areas; no moving machinery; frequent but not constant handling and fingering.

(R. at 24.)

At step four, the ALJ determined that Claimant was capable of performing past relevant work as a bartender and a waitress. (R. at 27.) At step five, taking into account Claimant's age, education, work experience, and RFC, the ALJ determined

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his or her past relevant work; and, if not, (5) could perform other work in the national economy.

3

that, in the alternative to her past relevant work, there are jobs that exist in significant numbers in the national economy that Claimant could perform. (R. at 28.) Based on the hearing testimony from a vocational expert, the ALJ determined that Claimant could perform such jobs as addressing clerk, final assembler, and telephone information clerk. (*Id.*) Consequently, the ALJ found that Claimant had not been under a disability, as defined in the Social Security Act, from July 11, 2016 through March 1, 2019, the date of the ALJ's decision. (R. at 29.)

## III. STANDARD OF REVIEW

The Court's review of a determination that a claimant is not disabled is limited to determining whether the record contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, the Court "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). Additionally, "[t]here are specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Reyes v. Bowen*, 845 F.2d 242, 244

(10th Cir. 1988). "Failure to follow these rules constitutes reversible error." *Id.*

### IV. ANALYSIS

Claimant raises six issues on appeal, which the Court will now address.

**A.     Argument 1: The ALJ erred at step two by ignoring three impairments which were supported by substantial medical evidence and failed to decide whether they were medically determinable and whether they were severe.**

At step two, an ALJ must consider "the claimant's impairment or combination of impairments" and determine whether that impairment or combination of impairments significantly limits plaintiff's ability to do basic work activities. *Hinkle v. Apfel*, 132 F.3d 1349 (10th Cir. 1997). To establish a "severe" impairment at step two of the sequential evaluation process, plaintiff must make only a "*de minimis*" showing. *Id.* at 1352. She need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). However, she must show more than the mere presence of a condition or ailment. *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

Claimant argues that the ALJ erred at step two by ignoring her severe impairments of diabetic peripheral neuropathy, gastroparesis, and non-healing diabetic wounds. (ECF No. 25 at 9.) She argues that not only did the ALJ fail to determine whether they were severe impairments, but he also failed to establish if they were medically determinable impairments. (*Id.* at 10.) In her brief, Claimant does not point to any specific evidence in the record to support her argument that these conditions were medically determinable impairments or severe impairments. (*Id.* at 9–10; ECF No. 36 at 1–2.) The Commissioner argues there was no error at step two because the ALJ discussed Claimant's impairments and specifically stated the impairments established by the evidence in his findings. (ECF No. 33 at 9.)

5

The Court finds no error at step two. While the ALJ's step two analysis does not explicitly identify diabetic peripheral neuropathy, gastroparesis, and non-healing diabetic wounds, the ALJ clearly considered Claimant's diabetic peripheral neuropathy and non-healing diabetic wounds throughout the remainder of his opinion. Indeed, the ALJ considered those conditions as part of Claimant's explicitly identified severe impairment of diabetes. The ALJ refers to Claimant's past medical history, which is "significant for . . . foot wound previously cultured with MRSA (in August 2015), and diabetic neuropathy." (R. at 25.) Further, the ALJ discusses in detail Claimant's foot wounds, which were diabetic foot ulcers, and her neuropathy in her hands and feet. (R. at 26.) Regarding her foot wounds, the ALJ found that they were not significantly affecting Claimant based on substantial medical evidence demonstrating that she maintained "normal" gait and station. (R. at 26, 388, 972, 987, 998, 1009, 1021, 1032.) In discussing the opinion of David Bristow, M.D., the state agency physician, the ALJ concluded that Claimant needed *more* hand and foot limitations than Dr. Bristow recommended due to Claimant's diabetic neuropathy. To address the limitations stemming from Claimant's neuropathy, the ALJ determined that Claimant "is able to frequently but not constantly handle and finger" and could only engage in "occasional operation of foot controls." (R. at 24, 27.)

With regard to Claimant's gastroparesis, the Commissioner emphasizes that "there is no evidence this was an issue during the relevant time period." (ECF No. 33 at 10.) For support, the Commissioner provides citations to the record demonstrating that Claimant claimed to have become disabled as of July 2016, though the medical records show that her gastroparesis was resolved in February 2016. (*Id.* (citing R. at 372, 376).)

6

In addition to Claimant's failure to identify any evidence of this condition during the relevant time period, the Commissioner also cites evidence showing that during the relevant time period, Claimant had normal abdomen examinations. (*Id.* (citing R. at 388, 398).) Therefore, in the absence of any evidence that Claimant's gastroparesis should have been discussed by the ALJ, much less have been found to have caused functional limitations, the Court finds no reversible error.

**B.     Argument 2: The ALJ's determination that Claimant's impairments of pancreatitis and vision loss were non-severe was not supported by substantial evidence.**

Claimant argues that the ALJ's determination that her pancreatitis and vision loss were non-severe impairments is not supported by substantial evidence. (ECF No. 25 at 10–12.) This argument is a non-starter. The Tenth Circuit has found that "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Here, the ALJ found two other impairments severe—diabetes and kidney disease. (R. at 23.) Thus, this argument is unavailing.

**C.     Argument 3: The ALJ erred at step two by failing to consider if the combination of impairments was severe.**

At step two, the ALJ is to determine whether a plaintiff has an "impairment or combination of impairments which significantly limits [his] . . . ability to do basic work activities." *Hinkle*, 132 F.3d at 1352.

Claimant contends that had the ALJ considered the "combined effects of [her] diabetic retinopathy, neuropathy, pancreatitis, non-healing wounds and gastroparesis, it certainly results in a finding that the combination significantly limited [her] ability to perform basic work activities." (ECF No. 25 at 12.) Following an explanation of the law

7

on this point, Claimant also states that "the medical evidence supporting these impairments is clearly present in the administrative record. However, demonstration that the ALJ considered the impairments in combination is not." (*Id.* at 13.) The Commissioner responds that Claimant's argument is both "inaccurate and irrelevant," where the ALJ considered all impairments related to diabetes to find that in combination they presented a severe impairment for diabetes. (ECF No. 33 at 12.) To that end, the Commissioner highlights that the ALJ formulated an RFC which accounted for Claimant's multiple functional limitations related to her diabetes. (R. at 24–27.)

As an initial matter, the Court observes that other than reciting the law, Claimant's arguments on this point are wholly conclusory. Despite these clear deficiencies in the briefing, her argument fails nonetheless. Throughout his decision, the ALJ considered Claimant's conditions related to her severe impairment of diabetes, including her non-healing diabetic wounds, peripheral neuropathy, and retinopathy. The ALJ specifically stated that he "considered all of the claimant's impairments individually and in combination" (R. at 23) and that he "considered all symptoms" in crafting Claimant's RFC (R. at 24).

Moreover, the Tenth Circuit has addressed the same argument set forth by Claimant at step two and found it unsuccessful. In *Carpenter v. Astrue*, a plaintiff argued that "the ALJ applied the wrong legal standard at step two by only considering her impairments *individually* to determine whether they were sufficiently severe to limit her ability to do basic work activities." 537 F.3d 1264, 1265–66 (10th Cir. 2008) (emphasis in original). However, the Tenth Circuit concluded that "any error here became harmless when the ALJ reached the proper conclusion that [the plaintiff] could

8

not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Id.*  Here, while it is clear from the ALJ's opinion that he considered Claimant's combination of impairments, even assuming for the sake of argument that he did not, such error is harmless under *Carpenter*.

**D.     Argument 4: The ALJ's RFC, determined at step four, is deficient.  It does not provide limitations for each of Claimant's impairments, both severe and non-severe.**

An ALJ must "consider the combined effect of all of the [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of such severity" as to warrant an award of benefits.  *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (citing 42 U.S.C. § 423(d)(2)(B)); *see also Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (explaining that when "assessing [a] claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe ").

Claimant argues that the ALJ ignored her impaired vision, diabetic neuropathy, gastroparesis, pancreatitis, and non-healing wounds.  (ECF No. 25 at 14.)  She contends that the ALJ's finding that she can "frequently but not constantly handle and finger" because of the neuropathy in her hands was "confusing."  (*Id.*)  She contends that the ALJ accepted her reports of diabetic neuropathy but did not explain why the same complaints about pain in her legs and feet were not accounted for in the RFC. (*Id.*)  She contends that though the ALJ mentions her non-healing diabetic wound, he concluded that she was non-complaint with her offloading boot but failed to cite the record or explain further.  She contends the ALJ makes no accommodation for either the wounds or the assistive device in the RFC and makes no accommodations for absences in the RFC despite her hospitalizations.  (*Id.*)

The Court disagrees. In his opinion, the ALJ noted that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," (R. at 24), and that he had "careful[ly] consider[ed] . . . the evidence" in finding Claimant not disabled, (*id.* at 25). *See Bales*, 576 F. App'x at 799. The Tenth Circuit teaches that "an ALJ is not required to discuss every piece of evidence." *Id.* (citing *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted)). And when an "ALJ indicates [s]he has considered all the evidence[,] our practice is to take the ALJ at [her] word." *Id.* (quoting *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (internal quotation marks omitted)).

Here, the ALJ thoroughly discussed the medical evidence, and there is no indication that, despite not expressly mentioning some of Claimant's medical conditions, the ALJ did not take them into account.

At the outset of the ALJ's opinion, at step two, the ALJ explicitly addressed Claimant's pancreatitis and vision loss, finding them to be "non-severe." (R. at 23.) Far from leaving it at that—contrary to Claimant's assertions—the ALJ next discussed his reasoning. With respect to Claimant's pancreatitis, the ALJ noted that while she "had an acute bout of pancreatitis," it "resolved." (*Id.*; *see also* R. at 397, 424.) Next, the ALJ discussed in detail Claimant's vision loss associated with her diabetes. The ALJ reiterated that she was recommended for annual eye examinations, noted her diagnosis of PDR[3] and a prior vitreous hemorrhage that was treated in February 2016. (R. at 23.)

---

[3] The Court looked up this acronym and, given the context of this case, presumes it stands for "proliferative diabetic retinopathy."

10

The ALJ observed that Claimant's visual acuity was 20/25 in the right eye at that time, and 20/80 in the left eye likely due to a minor corneal abrasion.  (*Id.*)  However, despite her visual impairment, the ALJ noted that Claimant remained able to "drive, cook, care for her child, and independently perform her daily activities."  (*Id.*)  Contrary to Claimant's assertions, in connection with his findings regarding Claimant's pancreatitis and visual loss related to diabetes, the ALJ cited a litany of medical evidence.  (*Id.* (citing Exhibits 3A; 4A; 1F; 2F; 3F; 4F; 5F; 6F/92–107, 147).)  Critically, at the end of this reasoning, the ALJ stated that "the absence of documented objective evidence demonstrating that these conditions cause more than a minimal limitation on the claimant's ability to perform work-related activities" resulted in his determination that they were "non-severe."  (R. at 23.)  Therefore, substantial evidence supports the ALJ's RFC, which accounted for Claimant's pancreatitis and vision loss related to diabetes by ascribing "minimal limitation[s]" to them.  (*Id.*)

With respect to her gastroparesis, the Commissioner points out that there is no evidence that this condition was an issue during the relevant time period.  (ECF No. 33 at 10.)  The medical record demonstrates that this condition resolved in February 2016.  (*Id.* (citing R. at 372, 376).)  Additionally, during the relevant timeframe, Claimant had normal abdominal examinations.  (*Id.* (citing R. at 388, 398).)  In her reply brief, Claimant fails to address the evidence the Commissioner identifies, much less point to evidence to the contrary.

Finally, with respect to Claimant's diabetic neuropathy and non-healing wounds, the Court finds that the ALJ discussed these conditions throughout the opinion and took them into account in formulating the RFC.  The ALJ included limitations to only frequent,

11

as opposed to constant, handling and fingering, and only occasional operation of foot controls, on top of the limitation to light work, to address Claimant's diabetic neuropathy. (R. at 24, 27.)  In addition, the ALJ specifically noted that "despite the claimant's foot wounds (diabetic foot ulcers) and neuropathy in her hands and feet, her gait and station were normal." (R. at 26.)  Specifically, he noted that Claimant on occasion had a large callus with a hematoma underneath on her feet, but her nail care was good and her sensation [was] intact. (*Id.*)  The callus healed well and without signs of infection. (*Id.* (citing R. at 3F/1–2; 5F/3, 18, 34; 8F/26–29, 37, 48, 51, 59, 62; 8F/106–08, 119, 127, 129, 142, 150, 153).)

Based on the ALJ's thorough examination of Claimant's impairments, the Court concludes that the ALJ committed no error in formulating the RFC at step four.

## E. Argument 5: The ALJ erred in evaluating Ms. Jensen'[4] [*sic*] subjective account of her symptoms and limitations.

An ALJ must consider a claimant's symptoms, including pain, to determine whether a severe physical or mental impairment exists. 20 C.F.R. §§ 404.1529, 416.929.  In making this determination, an ALJ follows a two-step process.  SSR 16-3P (Oct. 26, 2017).  First, an ALJ considers "whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." *Id.*  Second, an ALJ "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.*  This involves examining objective medical evidence and other evidence from the claimant, medical

---

[4] It appears as though Plaintiff incorrectly used the name "Ms. Jensen," when presumably he meant Claimant.

sources, and non-medical sources, and requires considering various factors listed in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).  *Id.*  Overall, an ALJ may "not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [the] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements."  20 C.F.R. § 404.1529.

Here, Claimant argues that the ALJ disregarded her testimony about her limitations and failed to provide sufficient reasoning for rejecting her testimony.  (ECF No. 25 at 15.)  However, she provides no citations to the medical evidence to contradict the ALJ's opinion.  Instead, she makes general, unsupported statements such as "[Claimant's] glucose blood results, body weight and BMI, the pressure in her eyes, constant abdominal pain and vomiting, multiple admissions to the ICU, out of bounds electrolytes in blood results, confusion and dizziness, repeated notes of hypercalcemia and syncope all tell a very different story."  (*Id.* at 17.)  It is not the Court's job to find evidence to support Claimant's arguments.  Nonetheless, as the Commissioner explains (ECF No. 33 at 13–15), substantial evidence supports the ALJ's opinion.

The ALJ followed the two-step process required by the Social Security Administration.  *See* SSR 16-3P.  First, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]"  (R. at 25.)  Second, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  *Id.*  Contrary to Claimant's arguments, the Court observes that throughout the opinion, the

ALJ carefully noted where his evaluation of the medical evidence diverged from Claimant's subjective complaints.

The ALJ noted that throughout the record and at the hearing, Claimant alleges disability based on the symptoms of her physical impairments, and the limiting effects thereof, *e.g.*, difficulty with lifting, standing, walking, bending, and climbing stairs. (R. at 25.) However, the ALJ determined that while the record establishes that such conditions and symptoms are "present," the record as a whole does not fully corroborate the disabling severity of symptoms and degree of limitation alleged. (*Id.*) For support, the ALJ pointed to the fact that Claimant's diabetes and kidney disease remained "stable with her prescribed course of treatment" and that "her physical conditions continued to generally remain stable, as evidenced by the relatively unremarkable physical examination findings reported by treating physicians and emergency room doctors." (R. at 25.)

Substantial evidence from the medical records supports such observations. For instance, treatment notes reveal that Claimant's urinalysis was "generally benign," she ambulated well, and her abdomen was found to be normal. (R. at 388, 390.) In August 2016, Matthew Cyphers, M.D., noted that her extremities were normal, she had full strength throughout, and her abdomen examination was benign. (R. at 398.) Katharine McCrea, M.D., made similar findings the same month. (R. at 427.) In September 2016, Dr. McCrea noted some numbness in Claimant's left hand but also that Claimant maintained normal grip strength, normal finger thumb pincher grasp bilaterally, and no resting or intention tremor. (R. at 446.) Additionally, Dr. McCrea observed normal 5/5 strength at elbow and no swelling or deformity in the hands. (*Id.*) In September 2016,

Dr. McCrea observed that Claimant was in "no acute distress" with normal examination findings. (R. at 443.) Additionally, Markus Wettstein, M.D., noted that Claimant had normal gait and station in August 2016, and while he noted her calluses and left heel ulcer, he also observed no drainage and good nail care. (R. at 998.) Dr. Wettstein again noted that Claimant's gait and station were normal in September, October, and November 2016. (R. at 1009, 1021, 1032.)

The ALJ opined that the medical evidence revealed "stark contrasts" between Claimant's allegations and the objective and clinical findings. (R. at 25.) Highlighting the fact that although Claimant's past medical history is significant for insulin dependent uncontrolled blood sugars, a foot wound previously cultured with MRSA, and diabetic neuropathy, the ALJ noted that he could not ignore that Claimant also continued to smoke cigarettes against medical advice, was non-compliant with her offloading boot, and failed to follow up with routine wound care as recommended. (*Id.*) In evaluating Claimant's subjective complaints, the ALJ also underscored that treatment notes showed that Claimant's blood sugar problems in October 2018 were likely due to medication non-compliance as well as the use of methamphetamine. (R. at 26, 1168–69.) According to the ALJ, "[s]uch objective evidence is not fully consistent with the claimant's reports of disabling symptoms." (R. at 26.)

In addition, the January 2017 opinion of the state agency physician, Dr. Bristow, supports the ALJ's opinion regarding Claimant's subjective complaints. Dr. Bristow noted that Claimant cared for her daughter; read and played with her daughter; cooked for, cleaned for, and drove her daughter; could do personal care; prepared meals daily; did chores with breaks; pulled weeds outside; drove a car; shopped twice weekly; went

out for coffee or to watch movies a few times a month; went to school events; visited with her mother; could walk eight feet; and had no limits with attention and instructions. (R. at 66.)  Further, Dr. Bristow's RFC for Claimant was less restrictive than that of the ALJ.  (R. at 68–70.)

Ultimately, in formulating the RFC, the ALJ also noted that while "severe medical conditions exist, the objective findings simply do not justify the disabling limitations that the claimant alleges in her testimony."  (R. at 27.)  He pointed out that the severity of her medical conditions did not require surgery or extensive medical treatment.  (*Id.*)  Given that Claimant alleged totally disabling symptoms, the ALJ noted that one might have expected to see some indication in the treatment records of restrictions placed on Claimant by the treating doctor.  (*Id.*)  However, no such restrictions are to be found in the record.  While Claimant disputes whether this is a fact that the ALJ should consider, the Tenth Circuit has found it proper for the ALJ to take into account in evaluating a claimant's allegations of total disability.  *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (fact that none of claimant's treating physicians placed any restrictions on his activities or opined that he was disabled supported ALJ's finding that he was not disabled).  Thus, the ALJ opined that Claimant's "disability could only be based upon subjective symptoms, which [he found] not fully consistent with the evidence, except as to the extent of the [RFC] . . . ."  (R. at 27.)

The Tenth Circuit has found that "credibility determinations are peculiarly the province of the finder of fact," and the Court "will not upset such determinations if they are supported by substantial evidence."  *See Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (citation omitted).  Here, the ALJ determined that Claimant's medically

determinable impairments could reasonably be expected to cause her alleged symptoms but found that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with other evidence in the record. Because the Court finds that the ALJ's opinion was supported by substantial evidence in the record, described above, the Court finds no reversible error.

**F.      Argument 6: The ALJ failed to fully develop the record.**

"In a social security disability case, the claimant bears the burden to prove her disability."  *Wall*, 561 F.3d at 1062 (internal quotation marks omitted).  But because "administrative disability hearings are nonadversarial . . . the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Id.*  "This duty is not a panacea for claimants . . . which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning."  *Glass*, 43 F.3d at 1396.

 "'The standard' for determining whether the ALJ fully developed the record 'is one of reasonable good judgment.'"  *Segura v. Barnhart*, 148 F. App'x 707, 710 (10th Cir. 2005) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)).  If there is sufficient information to make a disability determination, the record is sufficiently developed.  *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

Here, Claimant argues that the ALJ failed to fully develop the medical record, stating that the ALJ "could have utilized a Medical Expert at hearing [*sic*]," "could have contacted any of Ms. Barker's treating physicians and asked for an interrogatory providing functional limitations, asking the clarification he needed to further understand the evidence," and "could have requested a consultative examination."  (ECF No. 25 at

17

19.) Beyond briefly stating that the ALJ held a "lack of opinion evidence" against her, Claimant does not provide any additional information regarding why the record was deficient to the point that the ALJ was required as a matter of law to contact a medical expert or Claimant's treating physicians, or obtain a consultative examination. (*Id.*)

The ALJ sufficiently developed the record here. As an initial matter, the ALJ had the benefit of nearly a thousand pages of medical records, reports by Claimant herself, and the benefit of state agency physician, Dr. Bristow, who reviewed Claimant's medical records to determine what functional limitations resulted from her medical impairments. (R. at 62–70.) Importantly, as the Commissioner points out, Claimant was also represented by counsel in the administrative proceedings, and counsel could have but did not assert that the record was insufficiently developed before the administrative hearing in this matter. (ECF No. 33 at 16.) *See Hendron v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014) (the claimant and her counsel "are in the best position to have knowledge of any additional medical records that may be relevant to her disability claim"). Therefore, the Court finds that the ALJ did not violate the duty to develop the record.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED. The Clerk shall enter judgment in favor of the Commissioner and against Plaintiff Chance Jensen, guardian of Emily Jensen, minor, on behalf of Briana J. Barker, claimant, and shall terminate this case. Each party shall bear his or her own attorneys' fees and costs.

Dated this 16th day of August, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge